UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

PAUL W. HIATT and MARILEEN J. MCMAHON,

Defendants.

CASE NO. C10-5333BHS

ORDER

This matter comes before the Court on Plaintiff United States of America's ("Government") motion for summary judgment (Dkt. 106), the Government's motion to partially strike jury demand (Dkt. 115), Defendant Marileen J. McMahon's ("McMahon") motion for extension of time and notice of intent to respond (Dkt. 122), Defendant Paul Wesley Hiatt's ("Hiatt") motion to re-open discovery and extend case schedule (Dkt. 126), and the Government's motion to strike additional responses (Dkt. 145). The Court has reviewed the briefs filed in support of and in opposition to the motions and the remainder of the file and hereby grants in part and denies in part the Government's motion for summary judgment, denies Hiatt's and McMahon's motions, and denies the Government's motions to strike for the reasons stated herein.

## I. PROCEDURAL HISTORY

On May 11, 2010, the Government filed a complaint seeking to reduce federal tax assessments to judgment and foreclose federal tax liens against Hiatt and McMahon. Dkt. 1.

On August 8, 2011, the Government filed a motion for summary judgment. Dkt. 106. On August 23, 2011, Hiatt filed a motion for an extension of time to respond to the Government's motion. Dkt. 110. On September 9, 2011, the Court granted Hiatt's motion, renoted the Government's motion, and informed Hiatt that his response to the Government's motion was due September 20, 2011. Dkt. 116.

On September 20, 2011, McMahon and Hiatt responded to the Government's motion. Dkts. 128 & 129. On September 23, 2011, the Government replied to both responses. Dkts. 130 & 131.

## II. FACTS

### A. Taxes

During the years 1993 to 1995 and 1999 to 2003 ("Tax Periods"), Hiatt worked for Pentac, Inc. ("Pentac") as an independent real estate agent. Dkt. 108, Declaration of Nathaniel B. Parker ("Parker Decl."), Exh. 1, Deposition of Paul Hiatt ("Hiatt Dep.") at 25:18–28:2. During the Tax Periods, Pentac was owned by Julian D. Jowers and his wife. Parker Decl., Exh. 3, Declaration of Julian D. Jowers ("Jowers Dep.") at 18:14–19:1 & 22:8-22:21. Mr. Jowers annually prepared Forms 1099 (statements of Miscellaneous Income) based upon contemporaneously maintained books and records of Pentac. *Id*. at 27:22–27:25 & 42:16–46:15. These statements included how much money in commissions Pentac paid to its agents, and the forms were submitted to the Internal Revenue Service ("IRS") and distributed to the agents of Pentac. *Id*. at 46:2–46:6.

Hiatt received checks consisting of his commissions for sales of real estate, and rather than depositing the funds in a bank, he cashed his checks. Hiatt Dep. at 27:23–28:2 & 38:25–39:5; Jowers Dep. at 78:21–80:3. Hiatt is uncertain of when he last filed a federal income tax return. Hiatt Dep. at 96:4–96:6. During the Tax Periods, he did not file federal income tax returns because he "discovered he was not personally liable to file one." Hiatt Dep. at 96:9–96:18.

The IRS conducted an examination of Hiatt's income for the Tax Periods. The examination was based upon reports of compensation paid from Pentac (Forms 1099), reports of interest income from Telco Credit Union or Tapco Credit Union (Forms 1099-INT), as well reports received of tax-deductible payments from Washington Mutual Home Loans, Inc., Sound Credit Union, and Wells Fargo Home Mortgage (Forms 1098). After the examination, the IRS sent Hiatt Notices of Deficiency for personal income taxes (Form 1040) for the Tax Periods, which alleged that Hiatt owed unpaid taxes and penalties. *See* Dkt. 107, Declaration of Revenue Agent Sean Flannery ("Flannery Decl.") ¶ 8, Ex. A (1993); ¶ 9, Ex. B (1994); ¶ 10, Ex. C (1995); ¶ 11, Ex. D (1999); ¶ 12, Ex. E (2000); ¶ 13, Ex. F (2001); ¶ 14, Ex. G (2002); ¶ 15, Ex. H (2003). The Government claims that the tax deficiency figures were automatically calculated by IRS software based on the information it had obtained.

With regard to Hiatt's income from Pentac, the IRS determined his earnings to be $85,267 in 1993 (Flannery Decl., Exh. I), $38,395 in 1994 (*Id*., Exh. J), $31,706 in 1995 (*Id*., Exh. K), $71,277 in 1999 (*Id*., Exh. L), $34,545 in 2000 (*Id*., Exh. M); $47,685 in 2001 (*Id*., Exh. N); $87,159 in 2002 (*Id*., Exh. O), and $21,314 in 2003 (*Id*., Exh. P). In their depositions, neither Hiatt nor McMahon could testify as to whether these income figures were incorrect, and Hiatt had no recollection of the amount of money he received from Pentac during the Tax Periods. Hiatt Dep. at 27:2-31:1; Parker Decl., Exh. 2, Deposition of Marileen J. McMahon ("McMahon Dep.") at 59:6–66:6.

In 2003 through 2005, authorized delegates of the Secretary of the Treasury made assessments against Hiatt in the amounts and for the tax periods listed in the Notices of Deficiency as follows:

| Type of Tax | Tax Period | Assessment Date | Assessment Amount and Type of Assessment |
|---|---|---|---|
| 1040 | 1993 | 7/28/2003<br>7/28/2003<br>7/28/2003<br>7/28/2003<br><br><br>11/07/2005 | $29,253.00 (Tax)<br>$39,341.66 (Interest)<br>$6,581.93 (Late Filing Penalty)<br>$1,224.68 (Estimated Tax Penalty)<br>$38.00 (Fees and Collection Costs)<br>$80.00 (Fees and Collection Costs)<br>$7,313.25 (Failure To Pay Tax Penalty)<br>$81.68 (Fees and Collection Costs) |
| 1040 | 1994 | 7/28/2003<br>7/28/2003<br>7/28/2003<br>7/28/2003<br>11/07/2005 | $590.31 (Estimated Tax Penalty)<br>$2,559.60 (Late Filing Penalty)<br>$11,376.00 (Tax)<br>$12,950.90 (Interest)<br>$2,836.50 (Failure to Pay Tax Penalty) |
| 1040 | 1995 | 7/28/2003<br>7/28/2003<br>7/28/2003<br>7/28/2003<br>11/07/2005 | $464.94 (Estimated Tax Penalty)<br>$1,929.15 (Late Filing Penalty)<br>$8,574.00 (Tax)<br>$7,983.34 (Interest)<br>$2,143.50 (Failure to Pay Tax Penalty) |
| 1040 | 1999 | 7/28/2003<br>7/28/2003<br>7/28/2003<br>7/28/2003<br>7/28/2003<br>11/07/2005 | $1,174.70 (Estimated Tax Penalty)<br>$5,461.43 (Late Filing Penalty)<br>$24,273.00 (Tax)<br>$7,688.04 (Interest)<br>$4,854.60 (Failure To Pay Tax Penalty)<br>$1,213.65 (Failure to Pay Tax Penalty) |
| 1040 | 2000 | 7/28/2003<br>7/28/2003<br>7/28/2003<br>7/28/2003<br>7/28/2003<br>11/07/2005 | $491.75 (Estimated Tax Penalty)<br>$2,071.35 (Late Filing Penalty)<br>$9,206.00 (Tax)<br>$1,659.40 (Interest)<br>$1,288.84 (Failure to Pay Tax Penalty)<br>$1,012.66 (Failure to Pay Tax Penalty) |
| 1040 | 2001 | 3/22/2004<br>3/22/2004<br>3/22/2004<br>3/22/2004<br>3/22/2004 | $557.89 (Estimated Tax Penalty)<br>$3,141.00 (Late Filing Penalty)<br>$13,960.00 (Tax)<br>$1,782.93 (Interest)<br>$1,675.20 (Failure To Pay Tax Penalty) |
| 1040 | 2002 | 12/13/2004<br>12/13/2004<br>12/13/2004<br>12/13/2004<br>12/13/2004 | $956.66 (Estimated Tax Penalty)<br>$6,441.30 (Late Filing Penalty)<br>$28,628.00 (Tax)<br>$2,755.25 (Interest)<br>$2,862.80 (Failure To Pay Tax Penalty) |

| | | | |
|---|---|---|---|
| 1040 | 2003 | 12/12/2005<br>12/12/2005<br>12/12/2005<br>12/12/2005<br>12/12/2005 | $115.24 (Estimated Tax Penalty)<br>$1,004.85 (Late Filing Penalty)<br>$4,466.00 (Tax)<br>$511.68 (Interest)<br>$446.60 (Failure to Pay Tax Penalty)<br>$64.00 (Fees And Collection Costs) |

Parker Decl., Exhs. 5-12. The Government claims that the total outstanding balance of the liabilities for Hiatt for the Tax Periods, due as of July 27, 2011, including statutory accruals, is $410,959.09. Flannery Decl., ¶ 32.

On December 7, 2004, the IRS filed a Notice of Federal Tax Lien ("NFTL") with the Pierce County Recorder's office relating to the assessments for the tax years 1993 through 1995 and 1999 through 2001. Parker Decl. ¶ 22, Exh. 21. On July 6, 2005, the IRS filed an NFTL with the Pierce County Recorder's Office relating to the assessment for tax year 2002. *Id.*, ¶ 23, Exh. 22. On April 5, 2006, the IRS filed an NFTL with the Pierce County Recorder's Office relating to the assessment for tax year 2003. *Id.*, ¶ 24, Ex. 23.

**B. Property**

The United States seeks to foreclose the tax liens that encumber Hiatt's interest in one parcel of real property located in Pierce County, Washington. The property is located at "7111 Raft Island Rd. NW, Gig Harbor, Washington 98335," or in the alternative, "9702 Kopachuck Dr. NW, Gig Harbor, Washington 98335" (hereinafter "Subject Property"). Dkt. 82, ¶ 5. Hiatt purchased the Subject Property in the early 1980s, and has lived there since. Hiatt Dep., at 53:7–53:12.

Hiatt and McMahon have been married for approximately 20 years. Hiatt Dep., at 31:2–31:13. On December 15, 1991, Hiatt and McMahon executed a Prenuptial Agreement that was recorded on July 21, 1993. Hiatt Dep. at 63:5–67:7; Parker Decl. ¶ 18, Exh. 17. The Prenuptial Agreement provided that Hiatt would retain his separate property interest in the Subject Property. *Id.*

On August 16, 1992, McMahon executed a quitclaim deed conveying any interest she had in the Subject Property to Hiatt. McMahon Dep., at 78:10–79:15; Parker Decl., ¶ 19, Exh. 18. The quitclaim deed was recorded on August 24, 1992. *Id*. Hiatt claims that the quitclaim deed was for the purpose of refinancing the mortgage on the Subject Property because McMahon did not have a credit history. Hiatt Dep. at 73:4–73:12.

Despite the Prenuptial Agreement and quitclaim deed, Hiatt testified that he had verbally agreed and intended to convey McMahon a half interest in the Subject Property following the refinance. Hiatt Dep. at 63:13–66:11, 80:22–81:5. McMahon testified that she and Hiatt had agreed that she would have a 50% interest in the Subject Property. Parker Decl. ¶ 25, Exh. 24. Hiatt asserts that in connection with a suit following a car accident in 2001, in which Hiatt sustained injuries, Hiatt and McMahon won a settlement in 2002 or 2003. Hiatt Dep. at 20:18-21:17. McMahon claims that she obtained an interest in a portion of the settlement fund, which she agreed to apply towards the mortgage encumbering the Subject Property. McMahon Dep. at 22:2–23:18. While McMahon cannot recall how much was paid, Hiatt asserts that it was approximately $65,000. McMahon Dep. at 94:6–94:8; Hiatt Dep. at 84:23–85:8.

On February 25, 2003, Hiatt filed a quitclaim deed purporting to convey a one-half interest in the Subject Property to McMahon. Hiatt Dep. at 75:5–75:23; Parker Decl., ¶ 20, Exh. 19. This quitclaim deed was prepared by Hiatt and does not contain a reference to any consideration paid for the transfer. *Id.* McMahon testified that she did not discuss the February 25, 2003 quitclaim deed with Hiatt, could not recall when he informed her that he had quitclaimed the property to her, and could not recall any reasons for quitclaiming the property to her, except for love and affection. McMahon Dep. at 82:24–85:23.

The Government claims that just prior to the conveyance on February 25, 2003 and just six days before Hiatt's filing of the quitclaim deed, the IRS sent Mr. Hiatt notices of

deficiency relating to the 1993, 1994, 1995, 1999, and 2000 tax years. Flannery Decl., Exhs. A-E. It is unknown when Hiatt actually received these notices, but he did attach them to a letter addressed to the IRS dated March 5, 2003. *See* Dkt. 42-3 at 1-19. The Government also contends that Hiatt had previously received notices of delinquent tax returns and proposed tax and penalties from the IRS, and Hiatt had begun his defense to the liability with correspondence to the IRS. *See, e.g.*, Dkts. 42-1 at 59-99 & 42-2 at 22-29.

## III. DISCUSSION

### A. Extension of Time

McMahon requests an extension of time to file an answer to the Government's motion for summary judgment. Dkt. 122. McMahon, however, filed a response on September 20, 2011. Dkt. 128. Therefore, the Court denies McMahon's motion as moot.

### B. Re-Open Discovery

Hiatt requests that the Court re-open discovery and extend the trial schedule so that Hiatt can obtain discovery regarding Agent Flannery. Dkt. 126. Hiatt claims that Agent Flannery was not disclosed as a witness and that he needs to depose Agent Flannery to preserve his testimony. *Id*. Hiatt's claims are without merit. On April 8, 2011, the Government disclosed Agent Flannery as a potential witness and stated that he would provide testimony regarding the calculation of Hiatt's tax assessment as well as the authentication of IRS documents. Dkt. 134, Exh. A at 4. Therefore, the Court denies Hiatt's motion.

### C. Motion to Strike Additional Responses

The Government moves to strike Hiatt and McMahon's supplemental responses to the Government's motion for summary judgment (Dkts. 136 & 138). The Court denies the motion and has considered the supplemental responses as well as the Government's supplemental response (Dkt. 145 Exh. A).

**D. Summary Judgment**

The Government moves for summary judgment on (1) whether Hiatt owes unpaid taxes, penalties, and accrued interest and (2) whether foreclosure of the tax liens are free and clear of McMahon's interest in the Property. Dkt. 106 at 2.

**1. Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**2. Taxes**

In an action to collect taxes, the United States has the initial burden of proof which can be satisfied by introducing proof of tax assessments. *See Palmer v. Internal Revenue Serv.*, 116 F.3d 1309, 1312 (9th Cir. 1997). The tax assessments and deficiency determinations are "entitled to a presumption of correctness so long as they are supported by a minimal factual foundation." *Id.* The burden then shifts to the taxpayer to show that the assessment is incorrect. *Id.*; *see also United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983); *Rapp v. Commissioner*, 774 F.2d 932, 935 (9th Cir. 1985). The presumption is rebutted by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous. *See Rapp*, 774 F.2d at 935.

In this case, the Government has submitted Certificate of Assessments, Payments, and Other Specified Matters for the income tax assessments against Hiatt for the Tax Periods. Parker Decl., Exhs. 5-12. These documents must be supported by a minimal factual foundation in order for the Government to have met its initial burden. *Palmer*, 116 F.3d at 1312. With regard to the years of 2002 and 2003, the Government has submitted tax forms created by Mr. Jowers, the owner of Pentac. Parker Decl., Exh 13. The Court finds that this is admissible factual support for the assessments and, therefore, the Government has met its burden as to 2002 and 2003.

With regard to the years of 1993-1995 and 1999-2001, the Government has not submitted any document that was provided to the IRS by Hiatt's employer, Pentac. The Government claims that the 1099-MISC forms were received by the IRS, but are no

longer maintained by the IRS. Mr. Jowers testified that he submitted an accurate 1099-MISC for every year in the Tax Period. Jowers Dep. at 42:16–46:15. Agent Flannery contends that his investigation of the IRS files included Information Return Program ("IRP") transcripts, which are electronically maintained transcripts of taxpayer information. Dkt. 133, Second Declaration of Sean Flannery, ¶ 5. According to these IRP's, the IRS determined Hiatt's income and resulting unpaid taxes. *Id.*, ¶¶ 6-13 & Exhs. Y–DD.

Hiatt objects to this evidence on multiple grounds. First, Hiatt argues that some of the evidence should be stricken because it was submitted with the Government's reply brief. Dkt. 138 at 1. The rule, however, is that the Court may not consider the new evidence without allowing the opposing party an opportunity to respond. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.), *cert. denied* 522 U.S. 808 (1997). Hiatt has had an opportunity to respond (Dkt. 138) and the Court has considered his supplemental brief. Therefore, Hiatt's objection is without merit.

Second, Hiatt argues that the majority of the Government's documents are not admissible evidence because they amount to nothing more than "compounded hearsay as presented." Dkt. 129 at 7-13. Hiatt's argument is without merit. The documents have been authenticated as documents kept in the ordinary course of business of the IRS and both the Government's counsel and Agent Flannery have submitted their declarations under penalty of perjury.

Third, Hiatt argues that the assessments are invalid because they are not the proper type of forms that the IRS should have issued. Dkt. 129 at 7-9. The Government, however, has submitted evidence that shows that it followed the proper procedure and issued the proper forms. The IRS sent Hiatt deficiency notices and allowed Hiatt time to contest the deficiencies in the United States Tax Court. Hiatt either ignored the notices or responded with irrelevant arguments. The Secretary of the Treasury then issued

assessments against Hiatt. Hiatt's contentions that the IRS should have issued 23C forms or any other forms are without merit, especially since the courts have routinely held that 4340 assessments are presumptively valid evidence of unpaid taxes. *See Palmer*, 116 F.3d at 1312. Therefore, the Court finds that the Government has met its initial burden of proof and the burden now shifts to Hiatt to establish by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous. *See Rapp*, 774 F.2d at 935.

On this issue, Hiatt has failed to submit any evidence that he did not earn the amounts that the IRS contends he did. Hiatt does present arguments that he "at all times rebutted in good faith that any such tax was due or owing" (Dkt. 129 at 7), that he is a citizen of Washington and federal tax laws do not cover citizens of this state (*id*. at 4), that his commissions were not income as defined by the Supreme Court (*id*. at 4), and that compensation for the expenditure of his life is the exercise of a fundamental right that is outside the taxing authority of the federal government (*id*. at 5). Not one of these arguments shows that the deficiency determinations are arbitrary or erroneous. Therefore, the Court finds that Hiatt has failed to submit any evidence to meet his burden on the issue of unpaid taxes.

Hiatt, however, claims that summary judgment is inappropriate because, based on material already in the record, there exists questions of material fact that "would fill a book." Dkt. 129 at 15. It is not the Court's job "to scour the record in search of a genuine issue of triable fact. [A district court can] rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Hiatt has failed to identify *any* evidence whatsoever that the Government's assessments are erroneous. Therefore, the Court grants the Government's motion for summary judgment on the Government's claim that Hiatt owes unpaid taxes for the Tax Periods.

**3. Penalties and Interest**

Certificates of Assessments are also entitled to the presumption of correctness for penalties and fees. *See Huff*, 10 F.3d at 1445-47. The taxpayer may rebut the presumption by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous. *See Rapp*, 774 F.2d at 935. Once an underlying income tax and associated penalty and costs assessment is established, the award of statutory interest is nondiscretionary. *Purcell v. United States*, 1 F.3d 932, 943 (9th Cir. 1993).

In this case, the Government requests that the Court grant summary judgment on the issue of penalties, fees, and interest. The Government's assessment are entitled to a presumption of correctness that Hiatt has failed to rebut. Therefore, the Court grants the Government's motion as to penalties and fees. The Court also grants the Government's motion as to interest.

**4. Enforcement of Liens**

Under 26 U.S.C. §§ 6321 & 6322, whenever a taxpayer refuses or neglects to pay an assessed tax after receiving a demand for payment, a lien in favor of the United States arises "upon all property and rights to property, whether real or personal, belonging to such person" as of the time the taxes are assessed. The Supreme Court has held that this broad language evidences a congressional intent that IRS liens reach any interest or right that is protected by law and has any exchangeable value. *See United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985); *see also Drye v. United States*, 528 U.S. 49, 56 (1999).

In order to evaluate a taxpayer's ownership interest, federal courts look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights

qualify as "property" or "rights to property" within the compass of the federal tax lien legislation. *United States v. Craft*, 535 U.S. 274, 278 (2002) (internal quotation omitted).

In this case, there is no dispute that Hiatt retains at least a 50% interest in the Subject Property. Hiatt requests that the Court exercise its discretion and prevent the Government from foreclosing on his home. The Supreme Court has stated that there are "virtually no circumstances . . . in which it would be permissible to refuse to authorize a sale simply to protect the interests of the delinquent taxpayer himself or herself." *United States v. Rodgers*, 461 U.S. 677, 710 (1983). The Court finds that Hiatt's request is without merit. Therefore, the remaining issue is whether the Court should order foreclosure of the Subject Property when McMahon retains a 50% interest. The Government did not address this issue in its motion. Instead, the Government requests that the Court order a foreclosure free and clear of McMahon's interest.

**5. McMahon's Interest**

The Government requests that the Court set aside Hiatt's transfer of a 50% interest in the Subject Property to McMahon because the transfer violated Washington's community property statutes, RCW Chapter 26.16, and Washington's Uniform Fraudulent Transfer Act ("UFTA"), RCW Chapter 19.40. Dkt. 106 at 17-24.

**a. Community Property**

In Washington, a spouse "may give, grant, sell or convey" an interest in real property to the other spouse. RCW 26.16.050. The transfer "shall operate to divest the real estate therein recited from any or every claim or demand as community property and shall vest the same in the grantee as separate property." *Id*. There are two exceptions to such a divestment of rights, which are as follows:

> [T]he conveyances or transfers hereby authorized shall not affect any existing equity in favor of creditors of the grantor at the time of such transfer, gift or conveyance . . . [and] any deeds of gift conveyances or releases of community estate by or between spouses or between domestic partners heretofore made but in which both spouses or both domestic

> partners have not joined as grantors, said deeds, where made in good faith and without intent to hinder, delay or defraud creditors, shall be and the same are hereby fully legalized as valid and binding.

*Id*. The party asserting that the transfer was made in good faith bears the burden of proving good faith. RCW 26.16.210.

In this case, the Government contends that the transfer was made to "hinder, delay and defraud" the IRS as a creditor (Dkts. 106 & 131) while Hiatt and McMahon assert that the transfer to McMahon was made in good faith (*see* Dkts. 128, 129, & 136). The issue, therefore, is reduced to the evidence submitted in support of each position. The Government has submitted evidence that Hiatt and McMahon married in 1992; they entered into the Prenuptial Agreement, which listed the Subject Property as Hiatt's separate property; McMahon quitclaimed any interest in the Subject Property to Hiatt in August 1992 to establish separate property; and Hiatt quitclaimed 50% interest in the Subject Property to McMahon in February 2003, shortly after the IRS issued the notices of deficiency to Hiatt. The Court finds that this is persuasive evidence, albeit circumstantial, that Hiatt quitclaimed his interest to hinder, delay and defraud the IRS.

On the other hand, Hiatt and McMahon claim that they always had a verbal agreement to transfer half of Hiatt's interest in the Subject Property to McMahon. *See, e.g.*, Parker Decl., Exh. 24. In 2001, Hiatt was involved in a motor vehicle accident and subsequently received a significant settlement. They claim that McMahon's community property portion of the settlement was applied to the mortgage of the Subject Property, and, after paying down the mortgage, Hiatt executed the quitclaim in favor of McMahon. Viewing the facts in the light most favorable to Hiatt and McMahon, the Court finds that a reasonable juror could find that the quitclaim was a good faith transfer. Therefore, the Court denies the Government's motion on this issue because a material question of fact exists as to the nature of the transfer.

**b. UFTA**

Under the UFTA, a transfer is fraudulent "whether the creditor's claim arose before or after the transfer was made or the obligation was incurred" if the debtor conducted it with "actual intent to hinder, delay, or defraud any creditor of the debtor." RCW 19.40.041(a)(1). Subsection (b) of the statute provides eleven nonexclusive factors for determining actual intent.

In this case, the Government fails to show that it is entitled to summary judgment on this issue. While the Government presents a plausible theory that Hiatt's transfer falls within the UFTA, the Court must view the facts in the light most favorable to McMahon. If Hiatt received a settlement and the settlement was community property, then using McMahon's portion to pay down the mortgage on Hiatt's separate property in return for a 50% interest in the property could be considered a legitimate transfer. In other words, McMahon and Hiatt have shown that there exists a material question of fact that requires credibility determinations, which overcomes a motion for summary judgment. *See T.W. Elec. Serv., Inc.*, 809 F.2d at 630 ("at this stage of the litigation, the judge does not weigh conflicting evidence with respect to a disputed material fact. Nor does the judge make credibility determinations . . . ."). Therefore, the Court denies the Government's motion for summary judgment on this issue.

**6. Hiatt and McMahon's Motions**

In their responses to the Government's motion, both Hiatt and McMahon requested that the Court enter summary judgment in their favor. The motions are based on numerous provisions of irrelevant law. Not only are the requests for relief frivolous, the motions are improperly presented to the Court because they are included in responsive pleadings. Therefore, the Court denies the motions for failure to follow the Local Rules.

**D. Motion to Strike Jury Demand**

On November 26, 2010, Hiatt filed a demand for a jury trial. Dkt. 32. On September 9, 2011, the Government moved to strike Hiatt's demand. Dkt. 115. McMahon responded to the Government's motion and, for the first time, requested a jury trial. Dkt. 124.

Based on the Court's findings and conclusions above, there are two remaining issues: (1) whether Hiatt's transfer to McMahon should be set aside and (2) if not, whether the Court should order foreclosure of the Subject Property despite McMahon's interest in the property. Neither of these issue are triable by jury. First, an action to set aside an alleged fraudulent transfer of real property is an equitable action, which does not create a right to a jury. *Johnson v. Gardner*, 179 F.2d 114, 117 (9th Cir.1949) ("the wrong wrought by the fraud is not remedial at law in any efficient and practical way, and the historical equitable relief by cancellation of record is the only adequate and complete remedy.") Therefore, even if Hiatt or McMahon properly demanded a jury trial, the issue of whether the transfer was fraudulent is not an issue triable by jury.

Second, the issue of whether the Court should order foreclosure of the Subject Property is within the Court discretion based on certain factors and circumstances. *See Rodgers*, 461 U.S. at 710–712. Therefore, there is no need to empanel a jury on this issue either, and the Government's motion to strike Hiatt's jury demand is denied as moot.

**E. Conclusion**

The Court grants the Government's motion for summary judgment against Hiatt on its claims for unpaid taxes, penalties, fees, and interest. The Court denies the remainder of the Government's motion because there exist material questions of fact on the issue of whether Hiatt's transfer of a 50% interest in the Subject Property to McMahon was done in good faith. These remaining issues of fact are not triable to a jury. Based on these decisions, it appears that there are two possible ways in which this action may proceed:

(1) the Government files another dispositive motion on whether the Court should order the foreclosure of the Subject Property despite McMahon's alleged 50% interest (*see Rodgers*, 461 U.S. at 710–712) or (2) the Court sets a bench trial to resolve the existing questions of fact. The Court requests additional briefing as to the parties' positions on how to proceed.

**IV. ORDER**

Therefore, it is hereby **ORDERED** that the Government's motion for summary judgment (Dkt. 106) is **GRANTED in part** and **DENIED in part** as stated herein, McMahon's motion for extension of time and notice of intent to respond (Dkt. 122) is **DENIED**, Hiatt's motion to re-open discovery and extend case schedule (Dkt. 126) is **DENIED**, and the Government's motion to partially strike jury demand (Dkt. 115) and motion to strike additional responses (Dkt. 145) are **DENIED**.

The parties may submit additional briefing as requested no later than December 23rd, 2011 and the briefs may be no longer than 12 pages.

DATED this 14th day of December, 2011.

BENJAMIN H. SETTLE
United States District Judge